IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBINA ZAFAR ALAM, | No. 2:17-CV-0701-JAM-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pending before the court are plaintiff's motion for summary judgment (Doc. 19) and defendant's cross-motion for summary judgment (Doc. 25).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on October 7, 2013. See CAR 20.[1] In the application, plaintiff claims that disability began on December 31, 2010. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on September 16, 2015, before Administrative Law Judge ("ALJ") Dianne S. Mantel. See id. In a November 4, 2015, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): fibromyalgia, cervical spondylosis and status post lumbar surgeries including laminectomy;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: medium work; the claimant cannot perform work where the pace of productivity is controlled by an external source over which she has no control, such as an assembly line or conveyor belt;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, plaintiff can perform her past relevant work and there are jobs that exist in significant numbers in the national economy that the claimant can also perform.

See id. at 22-34.

After the Appeals Council declined review on January 30, 2017, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521

---

[1] Citations are to the Certified Administrative Record lodged on August 28, 2017 (Doc. 13).

(9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ improperly evaluated the medical opinions of state agency consultants, Drs. Gilper and Zeutlin, and treating physician, Dr. Moynihan; (2) the ALJ's credibility finding is not supported by substantial evidence; and (3) in determining plaintiff's residual functional capacity, the ALJ erred by failing to comply with Social Security Ruling 12-2p with respect to evaluation of fibromyalgia, which was found to be a severe impairment. Plaintiff also argues that, as a result of these errors, the ALJ further erred by relying on vocational expert testimony based on hypothetical questions that did not accurately reflect plaintiff's residual functional capacity.

///

///

### A. Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

          1.      Drs. Gilper and Zeutlin

As to the state agency reviewing consultants, Drs. Gilper and Zeutlin, the ALJ stated:

> I have also considered the opinions of reviewing State agency medical consultants as contained in Disability Determination Explanation forms [Exhibit 1F, 5A]. The consultants reported their summaries of the medical record and their concluding opinions, with detailed reference to the medical record, including consideration of the claimant's subjective statements. Among other findings, they noted that the claimant did not report difficulty walking or mental impairments until much later in the application process. She primarily complained of right shoulder pain, but the medical findings were minimal and it appears that the claimant made good recovery following arthroscopic surgery.
>
> In evaluating the initial claim, the consultants concluded that the claimant could perform medium work, with the only non-exertional physical limitation being occasional reaching with the right upper extremity. On reconsideration, they noted some improvement in use of the right upper extremity, and after some discussion, concluded that the claimant could perform medium work, with non-exertional limitations of occasional climbing ladders, ropes, and scaffolds, frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. I give great weight to the opinions of the reviewing consultants, except finds [sic] that given the continued complaints of upper extremity pain, the claimant should never climb ladders, ropes, or scaffolds, and never crawl. She should be limited to frequent reaching in all directions, including overhead reaching, and she should avoid all exposure to unprotected heights. These limitations are included to accommodate the claimant's pain and fatigue symptoms, and are reasonable given the severe impairments as listed above.

CAR 31.

In challenging the ALJ's analysis of these doctors' opinions, plaintiff states that ". . .the ALJ did not agree that Ms. Alam can occasionally use her right upper extremity. . . ." Plaintiff adds: "The ALJ's reasons for finding that Ms. Alam is less limited in the use of her right extremity than found by the State agency medical consultants are not supported by substantial evidence."

/ / /

5

1    Plaintiff's argument is based on a misreading of the doctors' opinions and the
2 ALJ's analysis.  First, the doctors did not opine, as plaintiff suggests, that she is limited to only
3 occasional use of her right upper extremity.  To the contrary, and as the ALJ notes, the doctors
4 ultimately reached exactly the opposite conclusion.  While the doctors initially found that
5 plaintiff was limited to only occasional right upper extremity use, they noted improvement and,
6 on reconsideration, concluded that plaintiff has no restriction with respect to her right upper
7 extremity.  The only restrictions noted by the doctors on reconsideration were with respect to
8 climbing ladders, ropes, and scaffolds, frequently climbing ramps and stairs, balancing, stooping,
9 kneeling, crouching, and crawling.  See CAR 104-14, 123-38.  Second, the ALJ did not find that
10 the plaintiff is less restricted in right upper extremity, as also stated by plaintiff.  Again to the
11 contrary, the ALJ restricted plaintiff to frequent use of the right upper extremity, whereas the
12 doctors opined plaintiff has no restriction.

13    Plaintiff also argues that the ALJ erred by relying on the agency doctors' opinions
14 because they are outdated and the doctors did not have the benefit of reviewing plaintiff's records
15 relating to fibromyalgia.  As noted by plaintiff, Drs. Gilper and Zeutlin rendered their opinions in
16 December 2013 and April 2014, respectively.  Plaintiff alleged disability beginning in December
17 2010 and fibromyalgia was not even suspected until plaintiff began treating with Dr. Moynihan
18 in January 2014.  Given this history, the court does not agree with plaintiff that the opinions of
19 Drs. Gilper and Zeutlin are rendered irrelevant due to the passage of time.  To the contrary, they
20 reflect an assessment of plaintiff's condition as it existed three years after the alleged onset date
21 and just before fibromyalgia was indicated as a diagnosis by Dr. Moynihan on a March 2014
22 check-the-box form.  Moreover, the record reflects that plaintiff submitted evidence of her
23 condition after Drs. Gilper and Zeutlin rendered their opinions and after fibromyalgia was
24 diagnosed in 2014, and the hearing decision reflects that the ALJ considered this evidence.
25 / / /
26 / / /

2. <u>Dr. Moynihan</u>

Regarding treating physician, Dr. Moynihan, the ALJ stated:

In 2014 the claimant's primary care was taken over by Kevin Moynihan, M.D. The claimant again reported lower back pain with sciatica, right shoulder pain, and bilateral hand pain on January 28, 2014. Evidently the claimant did not have continuous pain symptoms, as the record states that at the time of the examination she was not taking any pain medications. Because the claimant reported pain in both hands, her doctor suspected bilateral CTS [carpal tunnel syndrome]. The claimant also complained of diffuse aches and pain, fatigue, depression, and anxiety. The claimant stated she felt tired all of the time and was depressed. The doctor suspected fibromyalgia due to the diffuse aches and fatigue and notes multiple trigger points on the arms, legs, upper back, neck and chest, as reported. The claimant also stated she had some urinary incontinence. The only treatment offered was Effexor 75 mg for depression, Prilosec 40 mg for GERD symptoms, and Naproxen 500 mg two per day for pain, and referral for additional testing was directed [Exhibit 4F18]. A cervical x-ray obtained February 5, 2014, showed degenerative spondylosis, but no fractures or lesions and normal vertebral alignment [Exhibit 4F27].

At a follow-up on February 14, 2014, the claimant's treating doctor diagnosed fibromyalgia, wrist pain, carpal tunnel syndrome, depression, GERD, lower back pain, neck pain, sciatica, shoulder pain, and urinary incontinence [Exhibit 4F14]. This recitation of medical conditions seems to be a mix of subjective complaints and clinical findings and is not especially helpful in evaluating the claimant's limitations. A MRI of the lumbar spine was ordered by that study, if obtained, has not been submitted as part of the medical record [Exhibit 4F14].

Dr. Moynihan saw the claimant on March 23, 2014. The treatment record indicates this was a follow-up appointment for shoulder and back pain. The doctor listed diagnoses as fatigue, fibromyalgia, lower back pain, and neck pain. On examination, the doctor found that the neck was normal, the neurological examination was normal, and the claimant move [sic] all extremities, walked with a normal gait, and was alert and oriented x 3. Again the only treatment forward was with medications of Effexor, Prilosec, and Naproxen [Exhibit 4F4]. The treatment record from this date is especially significant as the doctor prepared a medical source statement the same date stating that the claimant was unable to perform sedentary work. This treatment record contains very little that would support the doctor's opinion as to functional limitations. There are no recorded findings such as clinical observations, testing, or other office procedures that would be expected given the extreme limitations recommended by the doctor. . . .

A little over a month later on April 7, 2014, Dr. Moynihan again listed the claimant's multiple conditions, as including suspected fibromyalgia, complaints of diffuse aches, pains, and fatigue, and complaints of depression and anxiety. The right shoulder pain had improved with

|   |   |
|---|---|
| 1 | medication, but the claimant still reported lower back pain with sciatica and wrist and hand pain. The only treatment was continuation of medications [Exhibit 8F47]. |
| 2 | |
| 3 | In the most recent treatment record from Dr. Moynihan dated July 21, 2015, the claimant reported negative side effects from Effexor so the prescription was terminated. The claimant reported left elbow pain for the past four or five months, fatigue, diffuse aches and pain. The doctor concluded that these symptoms were consistent with fibromyalgia. Ditropan was prescribed for urinary incontinence and the doctor considered in the future prescribing Lyrica if fibromyalgia type symptoms persisted [Exhibit 8F3]. |


1  medication, but the claimant still reported lower back pain with sciatica
2  and wrist and hand pain. The only treatment was continuation of
   medications [Exhibit 8F47].

3  In the most recent treatment record from Dr. Moynihan dated July 21,
4  2015, the claimant reported negative side effects from Effexor so the
   prescription was terminated. The claimant reported left elbow pain for the
5  past four or five months, fatigue, diffuse aches and pain. The doctor
   concluded that these symptoms were consistent with fibromyalgia.
6  Ditropan was prescribed for urinary incontinence and the doctor
   considered in the future prescribing Lyrica if fibromyalgia type symptoms
7  persisted [Exhibit 8F3].

                                    * * *

8  . . .[O]n March 3, 2014, Dr. Moynihan completed a checkbox form, stating
9  that the claimant [is] unable to perform full-time work at a sedentary level.
   She had limitations in standing, sitting, lifting, bending, fingering, or
10 reaching. The doctor did not define or describe the extent or degree of
   limitations, only that the claimant had limitations. The doctor stated that
11 the claimant had fibromyalgia, diffuse aches and pains and fatigue, carpal
   tunnel syndrome, and chronic shoulder pain [Exhibit 7F]. This opinion is
12 given little weight. As discussed above, the treatment record from the
   same date this opinion was prepared does not contain observations, signs,
13 symptoms, or findings that support a limitation to sedentary exertional
   capability. The examination was generally normal and there were no x-
14 rays or other objective diagnostic test results reviewed, or anything in the
   limited record that would explain the extent of limitation in standing,
15 sitting lifting, bending, fingering, or reaching. . . .

16 CAR 29-31.

17 Plaintiff argues that the ALJ's focus on lack of objective findings and inconsistency with

18 objective findings is inappropriate in fibromyalgia cases.

19          The court does not agree with plaintiff for the simple reason this is not a

20 fibromyalgia case. Plaintiff claims disability beginning December 2010. Fibromyalgia was not

21 even first suspected until January 2014 and not diagnosed until March 2014. Therefore, it cannot

22 be said that plaintiff claims disability due to fibromyalgia, a condition which had not even been

23 suspected as of the alleged onset date. Moreover, as noted by the ALJ, fibromyalgia was

24 diagnosed by Dr. Moynihan on March 3, 2014, even though the doctor observed normal objective

25 findings in an examination conducted that same day. Finally, as late as July 2015, Dr. Moynihan

26 was only considering prescribing medication to treat fibromyalgia, suggesting that the

1 impairment was not as disabling as the doctor suggests in his March 2014 check-the-box form.
2 Therefore, to the extent Dr. Moynihan's opinions are based on his diagnosis of fibromyalgia, the
3 court finds that the ALJ did not err by giving little weight to the doctor's conclusory opinion.
4 See Meanel, 172 F.3d at 1113.

### B. Credibility Assessment

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

9

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As to the credibility of plaintiff's statements and hearing testimony, the ALJ stated:

> The claimant testified [on September 16, 2015] that she has [sic] two lower back surgeries a week apart when she was 27 or 28, almost 30 years ago and another lower back surgery in 2009. She has chronic pain in her back and also her neck. The pain occurs even with just sitting. She has difficulty standing, walking, and bending. She has pain radiating down both legs. The claimant estimated that she can sit for an hour, stand 30-45 minutes, and walk only about 10-15 minutes. She has difficulty rising from a sitting to a standing position. The claimant estimated that she can only lift or carry 10 pounds or less without having pain symptoms.
>
> In addition to back problems, the clamant testified that she has shoulder pain not resolved by surgery or physical therapy and bilateral elbow and hand pain, which she attributes to carpal tunnel syndrome of arthritis. She also has migraine headaches. She takes over the counter extra strength Tylenol for headaches, and thought her doctor had given her a new medication or will give medication at the next appointment. Headaches occur every two or three days but sometimes every day. The claimant also testified that she has urinary incontinence and wears special clothing and takes medication. Her doctor has advised that if the problem does not resolve surgery may be needed.

The claimant takes pain medications which help a little with symptoms, but cause side effects of stomach ache and constipation, for which she has been prescribed medication.

The claimant testified that she lives with her spouse and adult children. She does her own self-care, prepares meals, does household chores, drives, and attends religious services. She gets help from her family when she has too much pain. She walks around at times during the day, and watches and follows television shows, The claimant testified that she feels nervous when attending religious services and has trouble getting along with people there. At times she yells at her family when feeling overwhelmed by all the people in the house. When this occurs she is able to calm herself by sitting quietly and silently in her bedroom. On average, she lies down three or four times during the day to rest for an hour.

In addition to the claimant's testimony, I have considered all other statements submitted in support of the claimant's application.

In the initial Disability Report dated October 15, 2013, the claimant listed only back and shoulder injuries. She stated that she could speak and understand English, but could not read or write the language [Exhibit 2E].

The claimant described a wide range of daily activities in an Exertional Activities Questionnaire prepared November 13, 2013. The claimant stated that she walked normally, but could not lift heavy things, only small household or kitchen items. She could drive for about 100 miles but then would feel pain and numbness in her neck, shoulder, arms, and back. The claimant traveled to Pakistan in 2012, and at times used a wheel chair to assist with ambulation. Such long distance travel would likely be arduous and inconsistent with the degree of limitations and symptoms described by the claimant . Why she used a wheel chair is not explained, as she stated earlier in the Questionnaire that she was able to walk normally [Exhibit 6E].

In a Disability Report Appeals dated February 10, 2014, the claimant alleged that back and shoulder pain was much worse, and starting in 2013 she became very depressed. Her doctor prescribed Effexor for depression, Naproxen for pain, and Prilosec as an acid reducer. The claimant reported no negative side effects from medications [Exhibit 6E]. A final Disability Report Appeals was completed June 20, 2014. The claimant [stated] she was limited in sitting, standing, and bending, and could not drive. She had frequent urination urgency, and increased neck, shoulders, and back pain starting about February 2014. She had wrist pain that made brushing her teeth and combing her hair difficult. She wore braces on both wrists. The claimant alleged that she had a "poor attitude" because of the severity of pain symptoms, and limited her outside activities because of pain [Exhibit 7E].

///

///

|   |   |   |
|---|---|---|
| 1 | | As of July 14, 2015, the claimant was taking Omeprazole 40 mg for GERD, Effexor 75 mg 1/day for depression and Naproxen 500 mg for pain. No negative side effects of medications were reported [Exhibit 11E]. |
| 2 | | |
| 3 | CAR 26-28. | |

In finding plaintiff's statements and testimony "not entirely credible," the ALJ stated: "The record does show that the claimant has some pain, aches, and limitations, but the medical record does not support the severity, intensity, and frequency of symptoms and limitations as alleged by the claimant. . . ." Id. at 28. In particular, the ALJ noted that evidence shows plaintiff's symptoms were generally well-controlled with medications. See id. Finally, in support of her conclusion, the ALJ outlined the following longitudinal history of plaintiff's treatment records through January 2014, when plaintiff's primary care was taken over by Dr. Moynihan (discussed above):

| | |
|---|---|
| 2008 | Treatment record for neck and back pain begins. Without reference to any clinical findings, plaintiff was diagnosed with cervical radiculopathy, intractable neck pain, cervical degenerative disc disease, and chronic pain syndrome in June 2008 [Exhibit 11F11]. In July 2008, plaintiff told her doctor she used a cane for standing and bending and could only stand for about 15 minutes, though the record is silent as to the need for an assistive device [Exhibit 1F2]. |
| 2009 | The record contains no evidence to support plaintiff's testimony that she had back surgery in 2009. |
| 2010 | Plaintiff underwent arthroscopic surgery on February 15, 2010 [Exhibit 2F15]. Ten days after surgery, plaintiff reported significant pain [Exhibit 2F5]. An April 2010 physical therapy report indicated an improved range of motion. On April 12, 2010, plaintiff reported to her doctor that she was feeling good overall [Exhibit 2F6]. |
| 2011-12 | The ALJ noted little significant treatment until November 2012, at which time plaintiff reported that she was unable to return to work without pain [Exhibit 2F]. |
| 2013 | In March 2013, plaintiff reported continued pain, especially in the elbow, forearm, and fingers. A focused examination of her shoulder was normal. There were no significant tender points and any orthopedic cause of plaintiff's pain was ruled out. The doctor referred plaintiff to a rheumatologist to rule out fibromyalgia, arthritis, or any |

| | |
|---|---|
| 1 | other auto-immune disorder ]Exhibit 2F9]. |
| 2 | In October 2013, plaintiff's doctor diagnosed rotator cuff syndrome and recommended that she remain off work "for the time being," despite normal objective findings on examination including full range of motion and no tenderness [Exhibit 2F11]. |

<u>See</u> CAR 28-29.

Once again, plaintiff argues that reliance on the lack of objective evidence to support pain claims is inappropriate in fibromyalgia cases. As discussed above, the court finds that this is not a fibromyalgia case. In any event, plaintiff misreads the ALJ's decision regarding the credibility of her statements and testimony. While plaintiff would like to characterize the ALJ's reasoning in terms of lack of support by objective evidence, which can be a suspect reason in fibromyalgia cases, the ALJ in this case found that the record did not support plaintiff's allegations primarily due to numerous inconsistencies, which is always a valid reason to discount a claimant's credibility. Most notably, plaintiff alleges disability beginning in December 2010, but the treatment records through the end of 2013 are unremarkable and fibromyalgia was not even suspected until January 2014. Therefore, to the extent plaintiff alleges that she cannot work due to pain related to fibromyalgia, this allegation is inconsistent with the record as a whole and her alleged onset date in particular.

There are numerous other inconsistencies. For example, plaintiff's statements and testimony are inconsistent in that she told her doctor in 2008 she required use of a cane, but the record reflects no such requirement. Additionally, plaintiff testified that she had back surgery in 2009 but there is nothing in the record to support this contention. As of July 14, 2015, plaintiff was taking Effexor and reported no negative side effects, but just one week later on July 21, 2015, plaintiff reported to Dr. Moynihan negative side effects from Effexor and the medication was discontinued.

/ / /

/ / /

1    The ALJ also identified numerous inconsistencies in plaintiff's allegations

regarding her ability to sit in particular. Though plaintiff alleged that she was disabled as of

December 2010, in an October 2013 statement plaintiff stated she could drive, presumably in the

seated position, for a distance of 100 miles which, assuming a top speed of 70 miles per hour,

would yield of duration of over an hour sitting. In her September 2015 hearing testimony,

however, plaintiff alleged that she could sit no more than an hour. Compounding this

inconsistency, the record reflects that plaintiff was able to sit on an airplane long enough to travel

from the United States to Pakistan in 2012 with the assistance of a wheelchair, which does not

relate to plaintiff's ability to sit for the duration of the flight.

### C. **Application of Social Security Ruling 12-2p**

Residual functional capacity is what a person "can still do despite [the

individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

"physical and mental capabilities"). Thus, residual functional capacity describes a person's

exertional capabilities in light of his or her limitations.[2]

/ / /

/ / /

/ / /

---

[2] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Plaintiff argues that, in determining her residual functional capacity, the ALJ's focus on lack of objective evidence violated Social Security Ruling ("SSR") 12-2p, which sets forth the Commissioner's policies with respect to evaluating fibromyalgia. Citing <u>Revels v. Berryhill</u>, 874 F.3d 648, 662 (9th Cir. 2017), plaintiff states that SSR 12-2p requires the ALJ to construe the medical evidence "in light of fibromyalgia's unique symptoms and diagnostic methods. . . ." when analyzing residual functional capacity. Plaintiff notes that the Ninth Circuit concluded the ALJ "failed to heed the instructions of those rulings, and instead analyzed her symptoms and rejected Revels' claims without considering the unique characteristics of fibromyalgia, the principal source of her disability. . . ." <u>Id.</u> at 652. Plaintiff argues: "The ALJ made the same error here" and concludes that the ALJ's residual functional capacity assessment "reflects a fundamental misunderstanding of fibromyalgia." Specifically, plaintiff contends the ALJ erred by focusing on the lack of objective evidence, such as x-rays and MRI scans, or "objective positive findings" on examination, instead of "trigger points, which are found on examination throughout Dr. Moynihan's records."

As discussed above, the court does not agree with plaintiff that this is a fibromyalgia case in the sense that she is claiming disability due to fibromyalgia-related pain symptoms, as was the case in <u>Revels</u>. But, even if this was a true fibromyalgia case, the court finds that the ALJ complied with SSR 12-2p. Specifically, as <u>Revels</u> and the ruling mandate, the ALJ considered the longitudinal history of the record. See <u>Revels</u>, 874 F. 3d at 656-57. The ALJ outlined the record from 2008 through the most recent treatment record from Dr. Moynihan dated July 21, 2015, and found Dr. Moynihan's opinions and plaintiff's credibility suspect, findings which, for the reasons discussed above, the court finds to be based on proper legal analysis and substantial evidence. Though plaintiff would prefer for this court to review the record and reach a different result, doing so would exceed the court's jurisdiction under 42 U.S.C. § 405(g).

/ / /

/ / /

### D. Vocational Finding

Because the court does not find any errors with respect to plaintiff's residual functional capacity, the court also rejects plaintiff's argument that the ALJ erred by relying on the vocational expert's testimony.

### IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 19) be denied;
2. Defendant's cross-motion for summary judgment (Doc. 25) be granted; and
3. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 27, 2018

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE